### Pink Fondren v. The State.

#### No. 3766.    Decided November 3, 1915.

#### Rehearing denied November 17, 1915.

**1.—Gaming—Venue—Presumption.**

Under article 791, Code of Criminal Procedure, as amended, it is provided that this court on appeal shall presume that the venue was proved in the court below unless such matters were made an issue in the court below, and it affirmatively appears to the contrary by a bill of exceptions properly signed and allowed by the trial judge, and where the only bill reserved related to the court's failure to give defendant's special charge on this matter, the same is not sufficient to review the question; besides, the jury was authorized to find that the venue was proven. Following Barker v. State, 47 S. W. Rep., 980.

**2.—Same—Incompetency of Witness—Co-defendant.**

Where defendant called a co-defendant as a witness, he will not be heard to complain that the State offered proof showing that he was an incompetent witness; besides, the court erroneously overruled the objection of the State, and permitted the witness to testify at his instance.

**3.—Same—Competent Witness—Acquittal—Co-defendant.**

While it was competent for the State to seek to disqualify a defendant's witness by showing that he was also indicted for the same offense, yet there was no error in permitting said witness to testify for the defendant, as he had

paid his fine, although the court permitted him to do so for a wrong reason, and defendant could not complain.

**4.—Same—Offense of Gaming Defined—Private Residence.**

The statute now provides, and has so provided for several years, that card playing in any place other than a private residence, occupied by a family, is an offense, and where it was not contended that defendant was a married man, and that his family resided in the room in question, there was no error in overruling his motion for absent testimony to show that he played in a certain room in a boarding house, at a game of cards, if he played at all.

Appeal from the County Court of Tyler. Tried below before the Hon. Tom F. Coleman.

Appeal from a conviction of gaming; penalty, a fine of $12.50

The opinion states the case.

*Joe W. Thomas,* for appellant.—On question of venue: Hoffman v. State, 12 Texas Crim. App., 406; Stewart v. State, 31 Texas Crim. Rep., 153; Monford v. State, 35 id., 237.

On question of playing in room of boarding house: Osborne v. State, 72 S. W. Rep., 592; Wilkerson v. State, 72 S. W. Rep., 850; Chapman v. State, 140 S. W. Rep., 441; Johnson v. State, 143 S. W. Rep., 621; George v. State, 143 S. W. Rep., 621; Hipp v. State, 45 Texas Crim. Rep., 200.

On question of the insufficiency of the evidence: Hale v. State, 90 S. W. Rep., 654; Chism v. State, 71 Texas Crim. Rep., 389, 159 S. W. Rep., 1185.

On question of incompetence of witness: Brittain v. State, 36 Texas Crim. Rep., 406; Goode v. State, 32 id., 505.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of gaming, and his punishment assessed at a fine of $12.50.

Will Harris testified: "I live at Warren, Texas. I am deputy sheriff of Tyler County, and was on January 16, 1914. I remember the occurrence on the night of January 16, 1914, where two parties and myself found Pink Fondren and Albert Pennington and Joe Williford; this occurred in an old store building and warehouse used one time by George Wooley; the back used as warehouse. It is composed of two rooms, the front room used at one time as a cold drink stand. We found the door on north side of back room barred and paper in the key hole. We came around to the window and couldn't get in on that side; got a stick, then got out my knife and cut a hole in an old comfort that was used as a blind over the window; it was a cheap comfort, with the cotton scattered in it and you could see through it; cost about 75 cents or $1. They had two boards placed edge on edge at the bottom of the quilt as a dead fall. I could see motions of cards through the comfort, and after I cut it I could see them good. They were playing cards. I know they were playing cards. I watched them about fifteen minutes, until I got tired."

While the case was being presented to the jury, and after the evidence had closed, appellant requested the court to instruct the jury to return a verdict of not guilty on the ground that the venue had not been proven. This contention would have been sound had not article 791 of the Code of Criminal Procedure been amended in 1897. By that article it is now provided this court, on appeal, shall presume that venue was proven in the court below, unless such matters were made an issue in the court below, and it affirmatively appears to the contrary by bill of exceptions properly signed and allowed by the trial judge. The only bill in the record relating to this matter is one reserved to the failure of the court to give this special charge. This in no way evidences that venue was made an issue during the trial of the case, and if in fact we take the record as a whole, the statement of facts evidences that no such issue was made on the trial, but the whole case proceeded upon the theory that the house in Warren in which the deputy sheriff of Tyler County says he found appellant and two others gaming was in Tyler County. (Barker v. State, 47 S. W. Rep., 980.) While it may be said that there is no one who swore positively that the house, in which the card playing is said to have taken place, was in Tyler County, yet the jury, under the facts and circumstances in this case, would have been authorized to so find, had that been made an issue and the court submitted it to the jury in his charge.

By the above testimony it is seen that the State's witnesses testified that appellant, Albert Pennington and Joe Williford were playing together. When the defendant called Joe Williford as a witness, the State objected and proved by him that he was under indictment for the same offense. The objection to the witness testifying should have been sustained. Article 771, C. C. P., specifically declares that Williford was not a competent witness for defendant. Article 772 provides that evidence may be introduced to prove him an incompetent witness. Consequently, there was no error in permitting the State to introduce evidence that Williford was indicted, charged with the same offense. The only error committed was in permitting the witness to testify after the State had made this proof. As the defendant called Williford as a witness, he will not be heard to complain that the State offered proof showing that he was an incompetent witness. And especially has he no ground of complaint, since the court erroneously overruled the objection and permitted the witness to testify at his instance.

As to Albert Pennington, it was permissible for the State to seek also to disqualify him as he was also indicted for the same offense. However, there was no error in permitting him to testify for the defendant, as he testified he had paid his fine. When he was convicted and paid his fine, this removed the bar of incompetency as a witness. The fact the court said he would permit the State to make the inquiry to affect the credit of the witnesses does not render the inquiry improper—it was only giving a wrong reason. The testimony was not admissible to affect their credit, but was admissible on the issue of whether or not they were competent to testify as witnesses for appel-

lant. As before stated, the court erred in permitting Williford to testify for defendant after the proof had been made, but there was no error in permitting Pennington to testify as he showed he had paid the penalty. As the defendant got the benefit of both the competent and incompetent witness, it is a matter of which he can not be heard to complain.

Appellant contends that if he did play at a game of cards (which he denies) it was in his room in Poland's boarding house. W. I. Poland testified: "I lived in Warren, Texas, on the night of January 16, 1914; was then, and my family are now running the boarding house at Warren. I have two houses, about 100 yards apart. One we live in, and the other I use for my boarders to room in, and the house in question where Joe Williford and Dick Barclay slept at that time was then used by me as a sleeping apartment for my boarders, and Joe Williford occupied the middle room, slept there and had all his clothes, a grip, etc., in that room, also at that time a man named Geo. Crone had his household goods in that room of Joe Williford; he asked me to let him store them in there for a few days and I let him do so; they were moved in about two weeks, just so soon as he could get him a house. Joe Williford used that room just as any boarder uses a room to live and sleep in, it was his private room. He had been working and boarding with me about two or three months, using the room in that manner." Counsel cite a great many old authorities holding that it is no offense to play in one's room at a boarding house, but he apparently does not recall that this is no longer the law in this State. The statute now provides, and has provided for several years, that card playing in any place, other than a private residence occupied by a family, is an offense. (See art. 548 as amended in 1901.) Since the amendment of that article of the Code it has always been held to be an offense to play cards in the private room of a boarder at a hotel or boarding house. In this case, it was not contended that appellant was a married man, and his family resided in the room. All of the record demonstrates that no family occupied the room. The evidence of the absent witness was, therefore, material to no issue in the case, and the facts it was alleged could be proven by him were not contested, and were proven by Mr. Poland and other witnesses, and if true would be no defense.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied November 17, 1915.—Reporter.]